All right. Mr. Stock? Yes. Good morning. Good morning, Judge Lynn, and may it please the Court. This is a jurisdictional case. The key issue— Before we get into the jurisdictional question, could I clear up one thing about the contract? Does this contract have a termination convenience clause in it? No. It doesn't incorporate one from the FAR? I don't believe that it would, Your Honor. Isn't that kind of odd? The FAR explicitly, by the rulemaking that created the contractual scheme, does not apply. Isn't that kind of odd that a government contract wouldn't have a convenience termination clause? There are lots of contracts that come before this Court that don't have termination for convenience clauses. It does have a clause in it that says it's subject to changes in— That's a merits issue, Your Honor, and there may be some interesting questions there. Subject to changes in the law, I don't want to get into that because it's not presented here. We don't believe that's a defense. But if it should go back, that remains to be seen. That would be an arguable defense. It's not a jurisdictional issue. The question here is whether the last sentence in Section 154 of the 2008 Act is an unambiguous expression of congressional intent to withdraw Tucker Act jurisdiction. Okay, that's the standard that's long applied. In the Slattery case, the en banc decision from this Court in January, the formulation was as follows. This is page 45 of the slip opinion. Quote, there is Tucker Act jurisdiction unless such jurisdiction was explicitly withheld or withdrawn by statute. What do you think is the correct interpretation of that clause? The clause? Well, certainly at best it's ambiguous, and I think there's a better interpretation than it throws us out of court. Congress referred to damages in the same section, in Clause 1. It said that if damages are applicable, they should be paid out of the Medicare trust fund. In light of that reference to damages, Congress didn't want to prejudge the breach of contract case. They didn't want people thinking that just because damages are referenced in the statute, you get some kind of damages. So they said nothing in Clause 1 shall be construed to provide an independent cause of action. I don't understand what your construction is. Okay. I mean, I understand the argument about if it's ambiguous, you win. Yes. But trying to make sense out of this clause in the statute, it's hard for me to see what it means. Well, then I would submit we win also. But I think there is a meaning. There is a meaning. What is the meaning? I believe the meaning is they did not – first of all, it doesn't preclude anything. I mean, the government's brief at least a half a dozen times talks about the precluding language. This sentence does not preclude anything. It says that nothing in Clause 1 should be construed to provide an independent cause of action. Damages were provided for. What do you think Congress had in mind in writing that clause? What is it they were trying to reach in writing that clause? Look, Congress doesn't have to think things through, Your Honor. It doesn't. This Court does. If you had written that clause on behalf of Congress, what would you have had in mind when you wrote it? Anything? Nothing? I would have had in mind if we want to preclude jurisdiction in the Court of Federal Claims, we better darn well make it an unambiguous expression of our intent to do so. And it's not unambiguous. There's no question that it is not unambiguous. But the question is what could it – does it make any sense to have it? Or is your only argument that I don't know what it means and therefore I – No, I'm telling you. There's, I believe, a reasonable and I think the best construction – That's what I'm asking. – is that they didn't – Congress – they provided for damages to be applicable. Congress knew there were going to be claims – What initial review was being precluded? I think that's Judge Klager's question. Okay. Judicial review. Well, this is not an action for judicial review. The Court of Federal Claims does not have – But we're trying to understand what the language means. We're trying to see whether it has some substance to it. Okay. What, in your view, does it mean to preclude judicial review? It means that there would be – it means that judicial review is precluded. But that doesn't apply to – of what kind? Your Honor, I don't know the answer to that question. I do know that that sentence is not an unambiguous withdrawal of tougher jurisdictions. It doesn't preclude judicial review. It says that Clause 1 doesn't provide a right of judicial review, and I think the independent word could be brought into that second clause as well. It doesn't provide an independent right of judicial review. Okay? We're not claiming that the clause provides an independent right of judicial review or any right of judicial review. So you're saying that the language construed to provide an independent cause of action at least creates a sufficient ambiguity that precludes an interpretation to exclude jurisdiction. Absolutely. This – if the government doesn't cite a single case where jurisdiction was actually precluded, okay, under the Slattery formulation, it's got to be explicit. Under prior formulations, it has to be unambiguous. You know, the California case, which we cite, contains language that's much more clear and much more ambiguous than this. The language there was that there shall be, quote, no liability of any kind shall attach to or rest upon the United States for any damage from or by floods or floodwaters at any place. Held, Tucker Act jurisdiction not withdrawn. I guess the problem here for you – Excuse me? I guess the problem here is that what the government is saying is, look, there's only one possible interpretation of this language, and that is to preclude a judicial action for damages. And you're unable, they say, to provide an alternative interpretation. Therefore, the language is not ambiguous. Therefore, it precludes a judicial remedy for damages. Okay. That seems to be the argument. And today, I hear you saying that you can't provide an alternative, sensible explanation for the meaning of this language. I don't – with all due respect, Your Honor, I don't understand what is not sensible about the construction that Congress did not want people to think that by providing for damages, they were prejudging – they were providing a new claim by this statute. They didn't provide a new claim by this statute, and that's what this sentence says. It shouldn't be construed to provide an independent cause of action. I don't – again, with all due respect, I think that's a sensible construction. I think it's a plausible construction. I think it's a reasonable construction, and it makes that sentence ambiguous. Let me talk about – Go over that one more time. Congress explicitly provided for damages in Clause 1 to be paid out of the Medicare trust fund, right? Yeah. Okay. But they didn't want people to think that they were prejudging that you would actually be entitled by this statute, by that provision of damages, to get – to have a claim or to necessarily obtain damages. In other words, that the failure to create the administrative remedy wouldn't be subject to judicial review. Well, that's not what I'm saying, but I suppose that might be another construction. What I'm saying is that – It should be what you're saying. Okay. All right. I'll take it, Your Honor. The failure – That's certainly not an option that you've got to be saying. May I address that from another angle, though? I like it, and I'll take it, certainly, here today. The idea that this one word – let's talk about the claims process. The one word damages or the reference to damages authorized CMS to set up this voluntary discretionary claims process? I mean, think about that. That's extraordinary. I have never heard of a federal agency being authorized in their discretion to dole out money if they want to do it. Now, I think what happened, if I may – I think what happened here, the proposed rulemaking on that claims process was issued more than a year after the statute. It was in July – it's in the record – July of 2009. It was about six weeks after the motion to dismiss was filed. I think what happened here is that my very able counsel here – he won the case below – he's writing his motion to dismiss. He realizes he's got to do something with the word damages. Somebody realized they had to deal with that, and they created this claims process. Cartier-Som did submit a claim in – subsequent to the dismissal through the claims process in March of 2009. We have not got a decision yet 13 months later. I mean, that's – the Tucker Act was enacted to provide a surer remedy than that. So – Mr. Farr, what do you think the word independent means in this clause? Nothing in subclause 1 shall be construed to provide an independent cause of action. It means what I'm trying to explain, I guess with less success than I hoped when I rehearsed it. This clause 1, by mentioning damages, does not provide an independent claim for damages. It rather leaves the preexisting jurisdictional avenue and common law breach of contract claim in place. There's no new independent claim. What would have happened under your theory if that section 154 provision was not there, if the nothing in subclause 1 provision was not there? If that was not there, we'd still be here today, just the way we are. But there might be – Your position would be exactly the same with or without that language. I think so. Yeah. And so that you're saying that language really has no meaning. No. The meaning is that my position might be count 2 in my complaint. Congress provided for damages in this statute. We get them under the statute. That would be the – okay. So if that's – yeah. There might be a count 2. Count 1 would still be breach of contract, Court of Federal Claims, Tucker Act. Count 2, we have a right right here. Congress said that damages, to the extent they're applicable, should be paid out. And that's an independent claim that we bring as count 2 of our complaint. That's where we'd be without that sentence. And that's what Congress wanted to deter, wanted to avoid. Look, Congress knows how to preclude judicial review in the Medicare Act. There's no question about that. We cite in footnote 1 of our reply. There's dozens of provisions. There shall be no judicial or administrative review. Go for it. All right. Thank you very much. Mr. Borah. Good morning. Good morning, Your Honors, and may it please the Court. This Court should affirm the trial court's dismissal of Cardio San's claim for three reasons. First, the plain language of the MEPA at Section 154 does clearly state that the termination of the Round 1 contracts shall not be construed as providing an independent cause of action or right to. But what do you understand is meant by independent? What is an independent cause of action as distinct from the normal cause of action? What is it independent of? It is independent, Judge Plager, of a claim brought to CMS for damages as contemplated by Part 3 of Subclause 1, which says any damages that may be applicable are to be paid out of the Medicare Trust Fund. As the government reads it, the terminating language had three directives. It said the Round 1 cap contracts are to be terminated, two, no payments are to be made on those contracts, and three, any damages that may be applicable are to be paid out of the Medicare Trust Fund. Now, all three of those directions clearly speak to CMS and what it is supposed to do in terms of its administration of the Competitive Acquisition Program. Well, but so accepting that, I think your problem, your bigger problem, is with the first part of this language, which says nothing in Subclause 1 shall be construed to provide. And Subclause 1 doesn't provide the normal damage remedy that comes under the Tucker Act and common law contract. So how do you get out from that problem that it says nothing in Subclause 1 shall provide? Well, Judge Dyke, I think the way we get out of it is Subclause 1 directs that the contracts be terminated. And Cardio Sum's breach of contract action here is clearly, and they don't argue, based upon the termination as directed by the MEPA. It is impossible to divorce their notion of a common law breach of contract claim from the fact that that common law breach of contract claim is based upon the termination. Well, then wouldn't the way the statute would have been written that said the termination of this contract shall not create an independent cause of action? I mean, that's not what they said. That seems to be the way you're reading it, right? Well, but respectfully, I think the precluding language incorporates your reading as well as a broader reading which says the damages provision shall not be construed as providing an independent cause of action or right to judicial review. My answer is it does say that the termination of the contracts shall not be construed to provide an independent cause of action when it says nothing in Subclause 1 in which the termination provision is contained is identified. Your argument is really that there really is no other way to read the provision. Isn't that right? Absolutely, Your Honor. And Cardio Sum has certainly not provided. Let's explore that a little bit more closely. I may have walked into that one. Yes, unfortunately, Mr. Stark agrees with you that there is only apparently one way. Well, I'm not sure exactly where he—let me leave him out of this discussion at the moment. I've looked at all the cases that you both are citing about these provisions that say no judicial review. And they deal with things like eligibility determinations, awards of contracts, selection of items for competitive acquisition, physician payment amounts. All of them deal with the manner in which the secretary exercises his discretion or her discretion in terms of administering the system. So my question to you to begin with—I have several, but my first question to you is do you know of any other statutory provisions in this Medicare area that use the phrase providing an independent cause of action? I've found no other. They all talk about no judicial review, et cetera, of administrative action. But I find—I haven't found any that uses the phrase providing an independent cause of action. Am I missing something that you know about? You're not, Judge Plager. But I think the response to your question is— No, no, that's my question. My question is do you know of any other statutes that use that phrase or anywhere else in Medicare? I do not, Your Honor. Second question, before I get to my real point. Second question is do you know of any other provisions in the Medicare Act or in any other act where Congress has abrogated existing contracts as distinct from giving the Secretary unreviewable authority to make decisions? Other than Winstar, do you know of any other cases or situations in which Congress has abrogated preexisting contracts? I can't find any other cases. I wondered if you had found any. Right off the top of my head, I certainly could not provide you with an example. Well, I'll give you an example. There's the Portable to Portable Act years ago where the Supreme Court construed it one way and Congress changed to another. And it was the issue as to what was the impact of that on existing contracts and the decision of the Second Circuit holding that it didn't abrogate a contractual right made pretty clear that they thought if it had abrogated a contractual right that there would be a problem with eliminating a judicial remedy. So there is an example. It doesn't necessarily help you very much given the judicial outcome. That brings me back then. Thank you for that, Judge Dyke. That's helpful. That brings me back then to the answer. I'm going to answer the question I asked Mr. Stauffer. What could this statute possibly have meant if it doesn't mean what you want it to mean? It strikes me, and I'd like your reaction to this possible meaning. Perhaps what Congress had in mind was to say the decision to terminate these contracts shall not be subject to judicial review. That is to say, we don't want you courts to come along and question whether these contracts are terminated or not because we want to terminate them, because we want them to be rebid under a new set of rules. We don't want courts interfering with the administration of the program. That's one possible meaning of the phrase independent cause of action. But that would not then speak to the question of whether a cause of action for breach of contract, as in Winstar, would be judicially reviewed. Is that a possible reading? Respectfully, Your Honor, I think the problem with that reading is that it's unclear to me what an action simply challenging the termination of the contracts would be short of a claim for damages. I mean, the Court of Federal Claims can't… You could always say that Congress had no authority to terminate those contracts by statute. That's… I suppose, but… That's ex post legislation or any number. I could come up with a lot of good arguments. I think it's just doubtful. Well, except Cartier-Simon's briefing has repeatedly conceded that the terminations were authorized. That's certainly not the position that they have advanced. And certainly in the Court of Federal Claims, any action arising out of this contract would be a claim for breach and damages. And it's still… You see what I'm struggling with? I'm trying to see if there is any alternative explanation for that odd language.  I'm not sure. And my position is only that I don't think that sort of covers the entire scope of that precluding language there, especially to the extent it also speaks to neither an independent cause of action or right to administrative or judicial review. You do agree that that's somewhat odd language? Well, in retrospect, given that we're here, it could probably have been potentially written differently. I'm not sure any language would be lawyer-proof, but yes. Okay. That's a fair point. Okay. I think it's important to also note that the Competitive Acquisition Program clearly states that pretty much all of CMS's administration of it is not subject to administrative or judicial review. For example, CMS's implementation of the phased-in implementation of the program itself, CMS's selection of items and services to be provided as part of the program, its determination of payment amounts for the program, and the award of contracts. The precluding language of Section 154 is simply a logical extension of that. It, again, deals with the administration of these contracts, and that's made more clear by the fact that the MEPO, which terminated the contracts, also clearly stated that the contracts were to be immediately recompeted. The Medicare Modernization Act, which created the Competitive Acquisition Program, directed that the Competitive Acquisition Program was in an effort to effectuate savings in the Medicare program. It would not make sense for Congress to terminate these contracts so that they could be recompeted, but then at the same time open up the Medicare Trust Fund for the first time to trial courts to make awards of damages out of it. That would seem to run afoul of this idea that the program was to be insulated from judicial review and in an effort to effectuate savings in the program itself. You would agree, though, that giving damages remedy would not interfere with the ongoing management of the program, wouldn't you? Not with the management of the Competitive Acquisition Program, no. The contract would still be terminated and rebid in accordance with the new statute. And recompeted, that's correct. And, in fact, they have been. The problem, though, is that for the first time ever, the Medicare Trust Fund, which up to this point has been in the discretion of CMS as its trustee, would now be open to damages claims from an outside entity, which in terms of the larger administration of the Medicare program would create, in a little bit of a better word, new obstacles for CMS to consider in terms of its administration of the program. I'm not sure that that would be the correct construction of this under their view. I mean, you could say that what the statute did was to create a separate damages remedy out of the Medicare Trust Fund, and then in the last paragraph of the statute it provided a judicial review of that, while at the same time preserving the Tucker Act remedy with damages paying out of the judgment fund. That's another interpretation. Well, I'm not sure. Respectfully judged, I'm not sure I agree. I think that would still leave open the question of what the independent cause of action that's referred to. The independent cause of action was the right to seek damages from the Medicare Trust Fund, and the statute could be read as saying that's not creating a judicial cause of action with respect to the Medicare Trust Fund, but it doesn't say anything about precluding the normal damages remedy from the Tucker Act with judgments being paid out of the judgment fund. Right. Again, Judge Dyke, I think the problem is that normal cause of action, that common law cause of action here would be a breach claim arising from the termination, and the termination is also included in subclause 1, which the precluding language states shall not be construed to provide an independent cause of action or right to judicial review. I think when you read them all in their entirety to say that there's still a cause of action for a common law breach arising from the termination, notwithstanding the fact that subclause 1 directed the termination of the contracts and said that shall not be construed to provide an independent cause of action,  it reads that part of the precluding language away to allow for those, allow for Tucker Act jurisdiction to be exercised in this case. The trial court held that this statute would preclude a takings claim, although there was some question as to whether they had properly preserved that issue. You would agree, would you not, that a statute that precludes a constitutional remedy would raise some interesting constitutional issues, wouldn't you think? It would certainly raise interesting issues, Judge Plager. I think the issue here is there is an identification of a source of damages, should any be applicable, and an avenue by which CardioSOM can and has pursued those damages. So the only remedy potentially that CardioSOM has had taken from it is the right to sue in the court of federal claims. It's unclear to me that that is a constitutionally protected remedy when there is still, nonetheless, an avenue for damages. I see that my time has expired unless the Court has any further questions. All right. Thank you very much. Thank you. Mr. Stout. Thank you. Very briefly, I'm sorry, Judge Stack, I didn't hear the name of the case you mentioned, but I think another example is Lynch v. United States, where the Supreme Court dealt with a statute that was alleged to both take away a right and a remedy and strained very hard to say that Congress would not have taken away the remedy, they only took away the right. Mr. Stack, would you disagree with either of the alternatives? I like all of the alternatives, Your Honor. I wish I had thought of them, and I mean that very sincerely. But let me address one, this idea that, so maybe I should just stop there. I would like to say that this idea, which is also in Mr. Gore's government brief, that the termination, you know, nothing in Clause 1 shall create an independent cause of action. The termination is in Clause 1. That's not a jurisdictional issue. What he's really saying there is the sentence is a determination by Congress that there's no cause of action from the termination. That's a merits issue. Congress can't say that we terminate the contracts but you have no resulting claim. I think that's what he's really trying to say by that. Unless there are further questions, let me just close with this. In the original procurement, Carty Assam won bids in nine cities, started gearing up, and spent a lot of money. That's why we're here. They were terminated. The lawsuit was filed. In the re-procurement, they got zero contracts. They spent a lot of money. I thought it was only a two-week period. We can address that if necessary. I hope it is at a subsequent stage of the case. In the re-procurement, they got zero. To leave them with no contracts and no remedies would just be flat out unfair. Thank you. All right. Thank you very much. Thank both counsel. The case is submitted.